IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD ABERNATHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:19-CV-01062-MAB |
| ) | |
| PERCY MEYERS, ET AL., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Percy Myers and Kathryn Adams's motion, and supporting memorandum, for summary judgment (Docs. 140, 141). For the reasons set forth below, the motion is **DENIED.**

### PROCEDURAL BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 in the Central District of Illinois on November 29, 2018 for deprivations of his constitutional rights while incarcerated at Pinckneyville Correctional Center ("Pinckneyville") (Docs. 1, 42). Plaintiff alleged that Pinckneyville officials and staff provided inadequate treatment for his dementia (Doc. 42). After dismissing Plaintiff's first complaint on February 23, 2019 (Doc. 26), the Court conducted a threshold review pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on one Eighth Amendment claim of deliberate indifference to a serious medical need against Defendants Myers and Brown (Doc. 42). On October 1, 2019, this case was transferred from the Central District of Illinois to the Southern District of

Illinois (Doc. 63). Soon after, Plaintiff was appointed counsel on October 10, 2019 (Doc. 78).

Plaintiff then filed the second, and operative, amended complaint after seeking leave from the Court on April 23, 2020 (Doc. 127). In this complaint, Plaintiff brings an Eighth and Fourteenth Amendment claim that Defendants Brown, Myers, and Adams acted with deliberate indifference to the serious medical needs of Plaintiff by consciously failing to take reasonable measures to provide treatment for his serious medical needs (Doc. 127).

On June 25, 2020, Defendants Adams and Myers filed their motion for summary judgment on the issue of exhaustion (Docs. 140, 141). Soon after, on June 29, 2020, Defendant Brown filed a motion to withdraw the affirmative defense of exhaustion of administrative remedies (Doc. 142). The Court granted this motion on July 1, 2020 (Doc. 143). As such, only two out of the three Defendants filed the pending motion for summary judgment on the issue of exhaustion. Plaintiff filed his response on July 27, 2020 (Doc. 144). Defendants did not file a reply brief or otherwise address the additional facts asserted by Plaintiff or the evidence he submitted in support thereof. Because the parties' filings do not involve a genuine issue of material fact, no evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was necessary.

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R.

C<small>IV</small>. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, where there is no disputed issue of fact, no hearing is necessary.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozzo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see*

*also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[1] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an

---

[1] There are exceptions to this rule. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

### FACTUAL BACKGROUND

Plaintiff is currently incarcerated in the Illinois Department of Corrections ("IDOC") at Pinckneyville (Doc. 141, p. 1). In his complaint, Plaintiff alleges that he complained to the Mental Health Department ("MHD") at Pinckneyville of memory issues dating back to 2013 (Doc. 127, p. 2). Additionally, starting in 2015, he complained to the MHD that he was suffering from severe headaches. *Id.* Plaintiff alleges that Defendant Adams stopped, or adjusted, Plaintiff's medications for depression and anxiety as treatment for these severe headaches. *Id.*

On May 11, 2018, Plaintiff again complained of memory loss and headaches. He was concerned that he had dementia like his father. The employees in the MHD told him they would refer him to a psychiatrist and to discuss his concerns with the nursing staff. *Id.*

The record indicates Plaintiff saw Defendant Adams on April 4, 2018, May 3, 2018, and June 6, 2018, as she provided telepsychiatry and mental health care to him (Doc. 144-1, pp. 4-8). In the meeting notes, Defendant Adams details that Plaintiff is suffering from memory loss, headaches, depression, and mood swings. *Id.*

On June 21, 2018, Plaintiff filed grievance 06-72-18 (Doc. 141-3, pp. 166-69). In this grievance, Plaintiff describes not receiving treatment for forgetfulness, loss of concentration, and his inability to recall important dates, names, and facts. He explains that his brain is having pain, and he is noticing personality changes, including irritability, moodiness, nervousness, and anxiety. *Id.* He questions whether he has dementia and requests to have an x-ray and MRI of his head to determine the cause of his medical issues. He explains he wants to feel better as soon as possible. *Id.*

Plaintiff sent this grievance as an emergency directly to the Chief Administrative Officer ("CAO"), who concurred that the grievance should be designated as an emergency on June 22, 2018 (*Id.* at p. 166). This grievance was then sent to the Grievance Office the same day (*Id.* at p. 165). The grievance officer reviewed the grievance on June 25, 2018. *Id.* He acknowledged that Plaintiff requested mental health treatment. Additionally, the grievance officer detailed that Plaintiff feels as though he is becoming dysfunctional, experiencing lapses in concentration as well as forgetfulness. *Id.* He acknowledged that Plaintiff requested an MRI scan and x-rays to determine if the symptoms he was experiencing were related to dementia. The grievance officer spoke with the MHD and the Health Care Unit ("HCU") about this grievance, and documented their responses. *Id.* The HCU reported that plaintiff had not mentioned these issues to a

nurse he saw on June 18, 2018 to have his labs drawn. *Id.* Additionally, he refused a Nurse Sick Call ("NSC") on June 21, 2018. *Id.* The MHD reported that they decreased Plaintiff's psychiatric medication at his request because he felt like it may not be working and he was having sleep issues. Additionally, the MHD put Plaintiff on depression medication after he reported experiencing depression. *Id.* The grievance officer noted in this response that Plaintiff was seen by the psychiatrist (Defendant Adams) on April 4, 2018, May 3, 2018, and June 6, 2018. *Id.*

The MHD reported that they cannot diagnose dementia without testing, and are not equipped to do the testing at Pinckneyville. Therefore, they decided to simply reschedule him with the psychiatrist for a follow-up regarding his medication. *Id.* After reviewing this information, the grievance officer denied Plaintiff's June 21, 2018 emergency grievance. The CAO concurred with this decision on June 28, 2018. *Id.*

Plaintiff appealed this denial to the Administrative Review Board ("ARB"), who stamped the grievance as "received" on July 23, 2018 (*Id.* at pp. 163-67). The ARB denied Plaintiff's appeal on August 14, 2018 after determining the issue was "appropriately addressed by the facility Administration" since "all treatment is at discretion of tending staff" (*Id.* at p. 164). Plaintiff then filed his complaint in federal court on November 29, 2018, approximately three months after the ARB denied his grievance appeal (Doc. 1).

Defendant Myers[2] documented in medical notes dated November 30, 2018, that Plaintiff has a diagnosis of severe cognitive impairment and dementia[3] (Doc. 144-1, pp. 1-3). This was the first time Defendant Myers treated Plaintiff, and Myers avers Plaintiff requested to be tested for dementia at this visit (Doc. 144-4, p. 2).

On December 11, 2018, Plaintiff saw Defendant Adams for a telepsychiatry appointment (Doc. 144-1, pp. 11-12). Defendant Adams documented in her notes that Plaintiff told her she is "named in a law suit[sic] he has filed because he wasn't sent for an x-ray for his headaches" (*Id.* at p. 11).

On February 8, 2019, Plaintiff filed grievance 423-2-19 (Doc. 141-3, pp. 58-61). In this grievance, Plaintiff describes being blocked from filing grievances by the counselors in the grievance department. *Id.* He also outlines that he was seeking information, including his medical records, because he is taking a very high dosage of medications (*Id.* at p. 60). Plaintiff requests help getting a furlough for an outside hospital as well. *Id.* The grievance was reviewed by Plaintiff's counselor on February 15, 2019, who wrote, "Correctional Counselors are required to see their offenders once every 60 days. Last face-to-face was on 12/27/18. This is still within the counselors 60 day requirement" (*Id.* at p. 59).

This grievance is stamped as received by the ARB on July 1, 2019. The ARB reviewed this grievance on July 8, 2019, but the form did not include an outcome for the

---

[2] Defendant Myers became the Medical Director at Pinckneyville on June 12, 2018 (Doc. 141-4, p.1)

[3] It is unclear from the record when this diagnosis was officially made, but this appears to be one of the earliest times Plaintiff's dementia diagnosis is recorded.

review. The only information included on this form is that this grievance is regarding "Counselors (no dates)" (*Id.* at p. 58). Plaintiff points out there is no evidence in the record that this grievance was ever returned to him (Doc. 144, p. 2).

On March 20, 2019, Plaintiff filed emergency grievance 834-03-19 (Doc. 141-3, p. 95). In this grievance, Plaintiff describes that he has repeatedly requested help and additional testing for dementia, but has been told that they cannot test for dementia at Pinckneyville. *Id.* Plaintiff describes that he doesn't understand *why* Defendant Myers has not provided follow-up care. Plaintiff requests additional testing as soon as possible for hearing loss and dementia. *Id.*

This grievance was submitted as an emergency grievance to the CAO's office. The CAO reviewed the grievance on March 25, 2019, and determined it was a non-emergency. *Id.* Plaintiff was instructed to submit this grievance "in the normal manner." *Id.*

This March 20, 2019 grievance was then stamped as "received" by the ARB on April 18, 2019 (*Id.* at pp. 94-100). In addition to this grievance, Plaintiff included other grievances in this packet to the ARB as well. *Id.*

On April 24, 2019, the ARB rejected Plaintiff's appeal because they determined they previously addressed the issues outlined in these grievances on March 20, 2019 and because the grievance was not sent to the ARB by Plaintiff himself (*Id.* at p. 94). Plaintiff contends that there is nothing in the record to indicate who, exactly, sent these grievances to the ARB or to support that this packet of grievances was not sent to the ARB by Plaintiff himself (Doc. 144, p. 3). Plaintiff also argues that there is nothing in Department Rule 504

("DR 504"), which outlines the guidance for prisoner grievances, stating that an inmate must submit their grievances themselves to the ARB (Doc. 145, pp. 7-8).

Plaintiff's Cumulative Counseling Summary includes a staff note about this grievance, confirming that at some point prior to this grievance, he was diagnosed with dementia (Doc. 141-1, p. 7). Ms. Amy Hill, Correctional Counselor, writes, "Response to grievance 845-03-19 dated 3/21/19 in regards to Medical Treatment: 'Offender has been tested by Myers for dementia and he tested positive for early dementia. Offender also has hearing aids now. Dementia has no cure. You can do memory stimulating games to help decrease the loss. There is no medical need to transfer'." *Id.*

On March 27, 2019, Plaintiff filed grievance 921-03-19 detailing that he was not getting appropriate medical attention from Defendant Myers for memory loss and headaches (Doc. 144-3, p. 71). Again, Plaintiff says he has dementia and does not believe he has been tested for it and does not understand why. *Id.*

This grievance was forwarded to Plaintiff's counselor on March 28, 2019 (Doc. 144-1, p. 8). Plaintiff's counselor responded to this grievance on May 30, 2019, and detailed that Plaintiff has seen the doctor and nurse practitioner for his memory loss, and was diagnosed with early dementia. Defendant Myers indicated that he did not feel that further testing was necessary (Doc. 144-3, p. 71).

This grievance was stamped as "received" by the ARB on June 12, 2019. *Id.* The ARB indicated that the grievance was regarding medical care, including memory loss and headaches, but it was returned to Plaintiff without review because it did not include a response from Plaintiff's Grievance Officer or the CAO (*Id.* at p. 70).

After this March 27, 2019 grievance was returned to Plaintiff from the ARB, Plaintiff forwarded this, and other grievances, to the grievance officer. On June 25, 2019, the grievance officer returned all of these grievances to Plaintiff, indicating that he did not review them because they were submitted outside of the timeframe as outlined by DR 504 (Doc. 141-3, p. 55). Additionally, the grievance officer instructed Plaintiff that the original grievances should have been returned to the grievance office for second level review, but they were never received by the office. *Id.*

Plaintiff filed his First Amended Complaint on June 27, 2019 alleging that Defendant Myers was deliberately indifferent to his serious medical needs (Doc. 43). Soon after, on or around July 1, 2019, Plaintiff resubmitted his March 27, 2019 grievance (921-03-19) to the ARB (Doc. 141-3, p. 48). On July 18, 2019, the ARB informed plaintiff that his appeal was rejected because it had not been submitted in the time frame outlined in DR504. Additionally, the ARB determined they previously addressed this issue on June 13, 2019. *Id.*

Plaintiff filed his Second Amended Complaint on April 23, 2020, in which he alleges that Defendants Myers and Adams were both deliberately indifferent to his serious medical needs for not providing adequate treatment for his headaches and dementia (Doc. 127).

Documented throughout Plaintiff's mental health records is a history of mental illness, which exhibits itself in a variety of ways. Plaintiff has been described as "talkative, tangential, and very difficult to redirect," and difficult to understand by Defendant Adams (Doc. 144-1, p. 14). Plaintiff also has a history of severe headaches on a daily basis,

which he explained impacted him significantly (*e.g.*, "I'm losing my mind with these headaches") (*Id.* at p. 10). Plaintiff was prescribed psychotropic medications, and has a history of being depressed, feeling anxious, and having difficulty sleeping (*Id.* at pp. 7, 16, 19-25).

Plaintiff also described his issues with the grievance process overall. He explained he had issues staying focused while completing the grievance process because of his documented headaches, memory loss, and body pains (Doc. 144-2, p. 2). Plaintiff avers that he tried to get help with his grievances from the grievance counselors, but that they refused to help him, frequently stating he completed duplicate grievances that could not be reviewed. *Id.* Plaintiff believed that there was a conspiracy against him by the grievance department to either hide or lose his grievances as well (*Id.* at pp. 2-3). Plaintiff avers that Counselors Hill, King, and Reid refused to cooperate fully with him, and lied on their responses to his grievances (*Id.* at p. 2). Plaintiff explains that he attempted to comply with the requirements and deadlines of the grievance process, but would receive his grievances back after delays, so the time for appealing had already run. *Id.* Finally, Plaintiff avers he sent letters and notes to the ARB explaining why he could not complete the grievance process. *Id.*

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. §1983 must first exhaust all administrative remedies. *See* 42 U.S.C §1997e (a); *Pavey v. Conley*, 544 F.3d, 739, 740 (7th Cir. 2008).

Defendants Meyers and Adams argue that Plaintiff has failed to exhaust his administrative remedies through any of the grievances outlined in the record. Plaintiff contends he did not have the mental capacity necessary to fully exhaust all of his grievances due to his mental health, dementia, and physical ailments. Plaintiff also argues he was thwarted from completing the grievance process by prison officials. Defendants did not file a reply brief and therefore did not dispute Plaintiff's assertions regarding his mental state and how his diagnoses prevented him from properly filing grievances.

It is important to reiterate that exhaustion is an affirmative defense, which the *defendants bear the burden of proving*. *Pavey*, 663 F.3d at 903 (citations omitted). In this instance, Defendants were unresponsive to one of Plaintiff's key arguments, and the evidence Plaintiff used to support this argument. Accordingly, as explained below, Defendants failed to carry their burden of establishing that Plaintiff failed to exhaust his administrative remedies.

<u>Plaintiff's Mental State and Dementia Diagnosis</u>

Absent from Defendant's motion for summary judgment on the issue of exhaustion is any mention of the impact Plaintiff's diagnosis of dementia had on him and his ability to access the grievance process. Plaintiff, on the other hand, argues extensively that his mental health and other medical issues significantly interfered with his ability to follow the grievance procedures (Doc. 145, p. 13). Viewing all of the evidence in the light most favorable to Plaintiff and drawing all inferences in his favor, the Court cannot conclude that Defendants Adams and Myers have met their burden of proving that

administrative remedies were available to Plaintiff, an incarcerated person diagnosed with dementia and struggling with other serious mental health conditions.

Under the PLRA, prisoners are required "to exhaust all *available* administrative remedies before suing in federal court." *Thomas v. Reese,* 787 F.3d 845, 847 (7th Cir. 2015) (emphasis added). A remedy is not "available" within the meaning of the PLRA to a prisoner unable to access the grievance procedure through no fault of his own, including prisoners who are mentally unable to pursue the grievance procedure. *Adams v. Wexford Health Sources, Inc.,* No. 15-cv-604-NJR-DGW, 2018 WL 4680728, *3 (S.D.Ill. Sept. 28, 2018) (citing *Weiss v. Barribeau,* 853 F.3d 873, 875 (7th Cir. 2017) (holding that a prisoner who was heavily medicated with mind-altering psychotropic drugs had muddled thinking, which impaired his ability to communicate the required information on his grievance forms). In *Adams*, the court held that a prisoner with diagnoses of bipolar and schizoaffective disorder could not access the grievance process because his extensive mental and physical impairments, and the treatment for these impairments, hindered his ability to utilize the grievance process. *Id.* at *5.

Here, Plaintiff submitted medical records and a sworn affidavit detailing how the lack of treatment for his dementia, memory loss, and headaches impacted his ability to fully participate in the grievance process. For example, Defendant Myers documented in medical notes dated November 30, 2018, that Plaintiff had a diagnosis of severe cognitive impairment and dementia (Doc. 144-1, pp. 1-3). On the Mini-Mental State Examination Form given to Plaintiff, presumably to diagnose him with these two diagnoses, Plaintiff could not tell Defendant Myers the year, season, date, day of the week, or month. *Id.*

Plaintiff also could not count backwards from 100, although he demonstrated that he could repeat the names of three things the examiner told him previously during the test. *Id.* Plaintiff's medical records also indicate he was prescribed psychotropic medications, and has a history of being depressed, feeling anxious, and having difficulty sleeping (*Id.* at pp. 7, 16, 19-25).

Plaintiff submitted an affidavit in which he explained that he believed the counselors had a conspiracy against him to either hide or lose his grievances (Doc. 144-2, p. 1). He explained because he had so many issues receiving responses from his counselors, he sometimes appealed directly to the ARB (*Id.* at p. 2). He also explained that he tried to get help from the counselors and grievance officers with the grievance process, but they refused to help. *Id.* Plaintiff attached letters he wrote to the ARB explaining the issues he was having with the grievance process at Pinckneyville. For example, Plaintiff submitted a Counseling Summary page to the ARB, which was stamped as received on July 1, 2019, in which Plaintiff writes, "Sir this is all I get and it becomes out of frame to do anything about matter with Springfield or just learn about 2nd level. They stall me. They Insult me. They held up documents" (*Id.* at p. 11). The grievances contained in this packet were denied by the ARB as being out of time, despite Plaintiff's explanation as to *why* they were out of time (*Id.* at pp. 11-12).

Defendants did not file a reply brief or otherwise counter Plaintiff's assertions regarding his arguments that his mental state prevented him from fully exhausting his grievances in any fashion. Also, it appears that some of the submitted materials, including Plaintiff's letters attached to his affidavit, were not included in Defendants records. As a

result, pursuant to Federal Rule of Civil Procedure 56(e), the Court deems these facts undisputed for the purposes of this Order. "[E]xhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas*, 787 F.3d at 847 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Here, in failing to respond to critical facts advanced by the Plaintiff, Defendants have failed to carry their burden to demonstrate that the exhaustion process was fully available to Plaintiff and that he failed to pursue it. As a result, the motion for summary judgment on the issue of exhaustion must be denied.[4] From the record as a whole, Plaintiff did the best he could, as a person with dementia who is prescribed psychotropic medication, to grieve the issues as he knew and understood them.[5]

## CONCLUSION

Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies is **DENIED.** The stay on merits-based discovery (*see* Doc. 110) is

---

[4] Even if the Court were to examine, in detail, the four grievances at issue in this case, Defendants have still failed to carry their burden. For example, Defendants argue Plaintiff's June 21, 2018 grievance did not properly exhaust his claims because it did not mention Defendant Adams by name. While the Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, 20 ILL. ADMIN. CODE § 504.810(c) (2017), the grievance form Plaintiff used only asked for a "brief summary of grievance" (Doc. 144-1, p. 166). There was no indication on the form that names had to be provided (*See Id.*). In this circumstance, the Seventh Circuit has held that the omission of names or identifying information does not mean that the prisoner failed to exhaust his administrative remedies so long as the grievances still gave prison administrators a fair opportunity to address the prisoner's complaints. *Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir. 2011). *Accord Jackson v. Shepherd*, 552 Fed. Appx. 591, 593 n.1 (7th Cir. 2014); *Conley v. Anglin*, 513 Fed. Appx. 598, 601 (7th Cir. 2013).

[5] The Seventh Circuit indicates that an inmate should "articulat[e] what facts the prison could reasonably expect from a prisoner *in his position*." *Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 2010 U.S. App. LEXIS 14361, at *6-7 (7th Cir. July 13, 2010).

**LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. A new scheduling order will be entered by separate order.

IT IS SO ORDERED.

DATED: **August 12, 2021**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**
