IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD ABERNATHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-cv-01062-MAB |
| | ) |
| PERCY MYERS and KATHRYN ADAMS, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Percy Myers and Kathryn Adams' motion, and supporting memorandum, for summary judgment (Docs. 161, 162). For the reasons set forth below, the motion is granted.

## PROCEDURAL BACKGROUND

Plaintiff Edward Abernathy ("Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983 in the Central District of Illinois on November 29, 2018 for deprivations of his constitutional rights while incarcerated at Pinckneyville Correctional Center ("Pinckneyville") (Docs. 1, 42). Plaintiff alleged that Pinckneyville officials and staff provided inadequate treatment for his dementia (Doc. 42). After dismissing Plaintiff's first complaint on February 23, 2019 (Doc. 26), the Court conducted a threshold review pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on one Eighth Amendment claim of deliberate indifference to a serious medical need against

Defendants Myers and Christine Brown in an amended complaint (Docs. 42, 43). On October 1, 2019, this case was transferred from the Central District of Illinois to the Southern District of Illinois (Doc. 63). Soon after, Plaintiff was appointed counsel (Doc. 78).

Plaintiff then filed a second, and operative, amended complaint after seeking leave from the Court on April 23, 2020 (Doc. 127). In this complaint, Plaintiff brought an Eighth and Fourteenth Amendment claim, alleging that Defendants Brown, Myers, and Adams acted with deliberate indifference to Plaintiff's chronic headaches and memory loss by failing to refer him for outside testing such as an MRI (*Id.*).[1] On October 14, 2022, Defendants Myers and Adams filed a motion for summary judgment on the merits and a memorandum in support (Docs. 161, 162). Plaintiff filed a response on November 14, 2022 (Doc. 168).

On November 16, 2022, Plaintiff filed a motion amend his second amended complaint to dismiss Defendant Brown with prejudice (Doc. 169). Rather than requiring Plaintiff to file an amended complaint, which would in turn moot the pending summary judgment motion (Doc. 161) and trigger a new round of briefing, the Court allowed Plaintiff to amend the complaint via interlineation and thus his case moved forward against only Defendants Adams and Myers (Doc. 170).

---

[1] On February 9, 2021, Plaintiff filed a motion to dismiss count II of his second amended complaint in which he sought injunctive relief (Doc. 149). The Court granted the motion and deemed his second amended complaint amended by interlineation to include only his Eighth Amendment claim for damages (Doc. 150).

## UNDISPUTED FACTS

Plaintiff is an inmate within the Illinois Department of Corrections ("IDOC"), currently incarcerated at Hill Correctional Center (Doc. 168-5). At all times relevant, Plaintiff was incarcerated at Pinckneyville (Doc. 141 at p. 1). Defendant Myers was the Medical Director at Pinckneyville (Doc. 162-1 ¶ 2), and Defendant Adams provided psychiatric services for Pinckneyville prisoners (162-2 ¶ 2).

From the record before the Court, Plaintiff began to complain about headaches, as well as constipation, sleeplessness, and erectile dysfunction, due to the medications he took for mental illness by at least April 2017 (Docs. 162-6 at p. 21, 162-7 at p. 1). Non-party doctors evaluated Plaintiff and adjusted his medication (Doc. 162-6 at p. 21-34). Adams first saw Plaintiff on December 20, 2017 (*Id.* at p. 63). On January 8, 2018, Adams noted that Plaintiff had trouble sleeping, had headaches that he attributed to his medication, and that his depression had worsened after his father was hospitalized and moved to a nursing home (*Id.* at p. 81-83). Adams adjusted his medications in an effort to reduce the headaches and help with sleep (*Id.* at p. 77-82). Adams continued to see Plaintiff every month from February to April 2018. Plaintiff did not complain of headaches or memory loss during these visits (Docs. 162-2 ¶ 5; 162-6 at p. 107-115). Adams continued to adjust Plaintiff's medications to help with trouble sleeping and depression (*Id.* at 109-115).

On May 3, 2018, Plaintiff complained to Adams that his headaches were getting more frequent and requested that he receive lower doses of his medication. Adams reduced the medication and started him on additional medication to manage his moods (*Id.* at p. 116-123). On May 11, 2018, Plaintiff complained to a mental health professional

of memory loss problems and headaches (Doc. 168-1 at 1-2). Plaintiff was concerned he had dementia like his father (*Id.*). The mental health professional asked Plaintiff several questions to test his memory and noted that Plaintiff was able to answer them without hesitation (*Id.*). On June 21, 2018, Plaintiff filed a grievance stating, "I'm seeking x-rays to show what problem there might be or not dementia . . . or blood vessel scaring me more," and "I need x-rays to help to see if -dementia or not" (Doc. 168-3 at p. 1-2). He also complained his medications were not helping and "are eating my brain" (*Id.*). On June 25, 2018, Plaintiff received a response to his grievance. The Grievance Officer noted that Plaintiff had been seen by a psychiatrist for adjustment of his medications multiple times in the last few months. The officer further noted that "we cannot diagnose his dementia without testing, and we don't do the test here at this facility." The officer scheduled follow-up appointments for Plaintiff to see the psychiatrist, presumably Adams, and another mental health professional (Doc. 168-3 at p. 3). Adams next saw Plaintiff on June 27. He complained of worsening depression because he had been in segregation for 30 days, as well as sleeplessness and headaches that he attributed to his medication. He asked that his medication be reduced, and Adams complied (Doc. 162-6 at p. 116-123).

On August 15, 2018, Plaintiff saw a mental health professional complaining of headaches. He expressed concern that he had dementia and asked for a brain scan. The mental health professional noted that she would consult with a psychiatrist (Doc. 168-1 at p. 3-4). Adams saw Plaintiff on August 23, 2018 (Doc. 162-2 ¶ 5). He complained that he had difficulty urinating, poor sleep due to a lumpy mattress, and general body aches. He also stated that he did not believe he was receiving proper medical treatment for his

chronic headaches. Adams noted that he has been prescribed numerous medications but stopped taking them shortly after due to side effects. Adams discontinued use of a medicine that Plaintiff has previously stated caused headaches and prescribed a new medication for his depression (*Id.*). In Adam's professional judgment, an MRI was not necessary because Plaintiff never presented with symptoms that would indicate neurological trauma, such as slurred speech, difficulty walking, or other movement abnormalities (*Id.* ¶¶ 6-7). On October 30, 2018, Adams saw Plaintiff again. She noted he appeared depressed, and was difficult to understand and difficult to redirect (Doc. 168-1 at p. 5-6). He again complained of debilitating headaches and said that he had spoken with "medical" on multiple occasions, but they told him there was nothing they could do (*Id.*). Adams prescribed topamax, a medication used to treat migraines, and scheduled a follow-up (*Id.*).

On November 23, 2018, Plaintiff saw a nurse and complained that his headaches would not go away. She referred him to Myers. (Doc. 162-2 at p. 1-2). Myers first saw Plaintiff regarding his headaches and memory loss on November 30, 2018 (Docs. 162-1 ¶ 5). Myers performed a mini mental-state examination, which is designed to assess an individual's recall of information, attention and calculation, use of language, and ability to follow commands (*Id.*). Plaintiff's results indicated that he had severe cognitive impairment with increased odds of dementia. (*Id.*). Myers ordered blood labs to rule out underlying medical conditions and prescribed 600 mg of Motrin to treat the headaches (*Id.*). Myers did not order an MRI because, in his opinion, the need for an MRI arises when there is an indication of physical conditions affecting the brain, such as recent trauma,

slurred speech, difficulty walking, or other movement abnormalities or neurological findings (*Id.*).

On January 3, 2019, Myers saw Plaintiff again and told him his labs were normal. Myers informed Plaintiff that memory loss and possible cognitive loss were associated with dementia and that there was no cure or treatment for dementia (*Id.*). Adams saw Plaintiff once a month throughout 2019. (Doc. 162-2 ¶ 5). She regularly adjusted, discontinued, or substituted his medications, trying to find ones that would alleviate his mental illness while causing fewer side effects (*Id.*). It appears Plaintiff stopped complaining to Adams of headaches around February 2019, though he complained to mental health staff about frequent headaches until at least June 2019 (Doc. 168-1 at 9-15).

Plaintiff was transferred to a different prison in February 2020 (Doc. 114). He was paroled on February 5, 2021 (Doc. 168-5). On April 13, 2021, a doctor referred him for a CT scan of his brain for headaches and memory loss (Doc. 168-6 at p. 1-3). The CT scan did not show any findings to explain the headaches or memory loss. (*Id.*). On March 18, 2022, Plaintiff had an MRI of his brain (*Id.* at p. 4-5). The MRI also did not show any findings that might explain his headaches and memory loss (*Id.* at p. 5).

## **LEGAL STANDARDS**

Summary judgment is proper when the moving party "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's

outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court may not "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). Instead, "it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836.

The Eighth Amendment's proscription against cruel and unusual punishment, incorporated through the Fourteenth Amendment, safeguards prisoners against "pain and suffering [that] no one suggests would serve any penological purpose." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)) (internal quotation marks omitted). The Supreme Court has thus recognized that the Eighth Amendment creates an obligation for prison officials to provide inmates with adequate medical care. *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, (1994)). Evaluating whether the Eighth Amendment has been violated in the prison medical context involves a two-prong analysis. The court first looks at whether the plaintiff suffered from an objectively serious medical condition and, second, whether the "prison officials acted with a sufficiently culpable state of mind," namely deliberate indifference. *E.g., Roe*, 631 F.3d at 857. In applying this test, the court "look[s] at the totality of an inmate's medical care when considering whether that care

evidences deliberate indifference to serious medical needs." *Petties v. Carter*, 836 F.3d 722, 728–29 (7th Cir. 2016).

Defendants do not challenge that Plaintiff suffered from a serious medical need regarding his memory loss and headaches. Therefore, the question for the Court is whether Defendants acted with deliberate indifference to that condition. A prison official exhibits deliberate indifference when they know of a serious risk to the prisoner's health exists but they consciously disregard that risk. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citation omitted). The deliberate indifference standard "requires more than negligence and it approaches intentional wrongdoing." *Id.* at 1073. It is "essentially a criminal recklessness standard, that is, ignoring a known risk." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) (citation omitted); s*ee also Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) ("Deliberate indifference requires a showing of more than mere or gross negligence, but less than the purposeful or knowing infliction of harm. We have characterized the required showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.") (citations and internal quotation marks omitted).

## DISCUSSION

In his response to Defendants' motion for summary judgment, Plaintiff argues that Adams and Myers pursued easier and less efficacious treatment for his memory loss and headaches instead of sending Plaintiff for an MRI or CT scan (Doc. 168). It is true that a medical professional's actions may reflect deliberate indifference if he chooses an easier and less efficacious treatment without exercising professional judgment. *Arnett v.*

*Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Also, a prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition. *Id.* Here though, Myers and Adams did not refer Plaintiff for a MRI or CT scan because they did not believe it was medically indicated, due to Plaintiff's lack of symptoms evidencing brain trauma, such as a recent blow to the head, slurred speech, or difficulty walking. A mere disagreement medical judgment does not give rise to a claim of deliberate indifference, and if medical personnel exercise professional judgment, the court will generally hold that the Constitution has been satisfied. *Duckworth v. Ahmad*, 532 F.3d 675, 681 (7th Cir. 2008). Here, Defendants' decisions not to refer Plaintiff for an MRI or CT scan were based on professional judgment, and Plaintiff's disagreement with that assessment does not make Defendants' actions unconstitutional.

Though in Myers and Adams's professional judgment there was no treatment or cure for dementia, and the cause of Plaintiff's condition could not be diagnosed by an MRI or CT scan, neither continued to pursue ineffective treatment. Myers ordered blood tests to look for additional underlying causes and adjusted Plaintiff's pain medication when a lower dose did not work. Adams continued to adjust Plaintiff's medication and prescribed additional medications based on Plaintiff's statements about which medications were working and which were causing side effects, even after Plaintiff stopped complaining to her of headaches. Plaintiff has produced no evidence that Myers and Adams's diagnoses and treatment were not the product of their professional judgment or were "blatantly inappropriate," as required for a deliberated indifference claim. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

In fact, Plaintiff has also produced no evidence that Myers and Adams were wrong about the cause of his condition. Neither the CT scan or MRI showed any cause for Plaintiff's symptoms, further evidencing that Myers and Adams were in fact relying on their medical judgment in treating Plaintiff. *See Grant v. Heidorn*, 802 Fed. Appx. 200, 201 (7th Cir. 2020) (unpublished per curiam) (affirming grant of summary judgment on plaintiff's deliberate indifference claim where plaintiff had produced no evidence that doctors were wrong about the cause of plaintiff's pain or that an MRI would have helped diagnose plaintiff's condition). As the Seventh Circuit has previously noted, "[a]n MRI is simply a diagnostic tool, and the decision to [forgo] diagnostic tests is 'a classic example of a matter for medical judgment.'" *Pyles*, 771 F.3d at 411 (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). In sum, there is no genuine dispute as to any material fact and Myers and Adams have demonstrated that they are entitled to judgment as a matter of law. No reasonable juror could find in Plaintiff's favor on his claims for deliberate indifference against Adams and Meyers. Summary judgment for the Defendants is warranted.

## Conclusion

For the foregoing reasons, Defendants Percy Myers and Kathryn Adams' motion for summary judgment (Doc. 161) is **GRANTED**. Judgement is granted in their favor and this case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: May 5 2023**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**
